

**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

Main Reception: (617) 748-3100

United States Courthouse, Suite 9200
1 Courthouse Way
Boston, Massachusetts 02210

December 9, 2004

Victoria Bonilla-Argudo, Esq.
Bourbeau & Bonilla
77 Central Street, 2nd Floor
Boston, MA  02109

Cathy Byrne, Esq.
Office of the Federal Defender
408 Atlantic Avenue, Third Floor
Boston, MA  02108

Valerie S. Carter, Esq.
Carter & D, LLP
530 Atlantic Avenue
Boston, MA 02210

John Cicilline, Esq.
387 Atwells Avenue
Providence, RI 02909

Carl Donaldson, Esq.
11 Beacon Street
Suite 600
Boston, MA 02108

Lenore M. Glaser, Esq.
25 Kingston Street
Boston, MA 02111

Robert Goldstein, Esq.
114 State Street
Boston, MA 02109

John D. Hodges
1360 Main Street
Tewksbury, MA 01876

John Palmer, Esq.
24 School Street
Boston, MA  02108

Tony Scola, Esq.
47 Harvard Street
Worcester, MA 02609

Roger Witkin, Esq.
6 Beacon Street
Suite 1010
Boston, MA 02108

Re:  United States v. Julio Santiago et al.
     Criminal No. 04-10336-NMG

Dear Counsel:

Pursuant to Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts, the government provides the following automatic discovery in the above-referenced case to you.  All the discovery indicated below is being to produced to each of you in regard to each of your clients, Julio SANTIAGO, Pedro Alberto MIRANDA, REYNALDO RIVERA, Enrique AGOSTO, Jose TORRADO, Carlos SANCHEZ, Luis SANCHEZ, Edwin TORREZ, Jose RODRIGUEZ, ZULEIMA REYES and Juan NUNEZ (collectively, "the defendants"). Reference is made to the bates-stamped documents already produced to you in connection with the detention hearing (Bates #1-811) and the bates-stamped documents enclosed with this letter (Bates #736A-B, 742A-B, 750A-B, 758A, 764A-B, 770A, 812-1423 [excluding Bates #1377-89 that, as explained below, are being sent to Duplicating Center] and the tangible items that are available for your inspection as indicated below).

A.   Rule 16 Materials

1.   Statements of Defendant under Rule 16 (a)(1)(A)

     a.   Written Statements

Enclosed are the following relevant written statements made by the defendants in the possession, custody or control of the government, the existence of which is known to the attorney for the government:

     1. Miranda forms signed by Defendants AGOSTO (Bates #1092);

2

Carlos SANCHEZ (Bates #1099)and Consent to search forms signed by Defendants REYES (Bates #1109); Carlos SANCHEZ (Bates #1237) are enclosed.

As to the other defendants, the government is not aware of any relevant written statements of theirs that are in the possession, custody or control of the government, which are known to the attorney for the government.

b.   Recorded Statements

Consensual   tape   recordings   were   made   of   telephone conversations  and  meetings  between  an  undercover  agent  and defendants ARROYO, REYES and RIVERA on various dates between December 2003 and March 2004.  Copies of these recordings are now on three CDs that are enclosed at bates #1374-76, attached hereto.

Other than the recordings listed in previous paragraph and the wiretap interceptions discussed below in Paragraph C, there are no relevant recorded statements of the defendants in the possession, custody or control of the government, which are known to the attorney for the government.

c.   Grand Jury Testimony of the Defendant

The defendants did not testify before a grand jury in relation to this case.

d.   Oral Statements to Then Known Government Agents

The following documents are enclosed:

1.  Booking sheets for the Defendants are enclosed (Bates #1346-73; Bates #1397-1417).  (Please note that ARROYO has not yet been arrested).

A description of the oral statements made by REYES (Bates #1110-1111), MIRANDA (who identified himself as Carlos Colon at the time of his October 15, 2004 arrest) (Bates #1093-95), Carlos SANCHEZ (Bates 1096-99; 1237), RODRIGUEZ (Bates #930-31 regarding statements made after his June 2004 arrest), MIRANDA (Bates #958 regarding statement made during a July 2, 2004 stop) and RIVERA (Bates #1390 regarding statements during the February 17, 2004 execution of a restraining order at his residence) before or after arrest, in response to interrogation by a person then known to him or her to be a government agent, which the government intends to use at trial.

3

As to the other defendants, the government is unaware of any oral statements made by the defendant before or after arrest, in response to interrogation by a person then known to the defendant to be a government agent, which the government intends to use at trial.

2.   Defendant's Prior Record under Rule 16 (a)(1)(B)

Although you already received a copy in connection with the detention hearing, enclosed is a copy of each defendant's prior criminal record except the records of SANTIAGO (previously provided to SANTIAGO's counsel in connection with the detention hearing), NUNEZ (previously provided to NUNEZ's counsel in connection with the detention hearing) and ARROYO.  (Bates #1347-73; 1276-77).

3.   Documents and Tangible Objects under Rule 16(a)(1)(C)

Books, papers, documents and tangible items which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial of this case, or were obtained from or belong to the defendant are described below.  As discussed below, copies of many of these items are listed below.  The originals of these items and the items not enclosed may be inspected by contacting the undersigned Assistant U.S. Attorney and making an appointment to view the same at a mutually convenient time.

a.   All heroin seized in this investigation as described in the DEA 7 reports enclosed (Bates #1123-1151 and described in Paragraph 4 below);

b.   Items seized in the course of the searches conducted in the course of this investigation as described in the search warrant returns (bates #736A-B, 742A-B, 750A-B, 758A, 764A-B, 770A), the reports describing these searches (Bates #1091-1122, 1240-48) and DEA 7 reports for Exh. 11-19 and DEA 7A reports for N-25 through N-95 (Bates #1143-51; 1170-1200; 1418-23);

c.   All other non-drug items (including but not limited to audio and video recordings, results of trash pulls), seized in the course of this investigation as reflected in the DEA 7A reports enclosed (Bates 1152-1200; 1202-09).  Please note that the copies of the consensual audio recordings reflected in these reports are enclosed (Bates #1374-76).   Copies of the intercepted wire interceptions (along with line sheets) are enclosed on disks and the intercepted electronic communications are listed on the enclosed log.   (Bates #1296-1300; 1280-83).   Each wiretap is

4

identified by telephone number; each call and line sheet is identified by the file name that identifies the Target Telephone, Date, Time and Call number. All of the video recordings that are identified in the enclosed DEA 7A reports (and surveillance conducted of RIVERA on March 23, 2004 [not assigned a N#, but described in Bates #894-95]) that are now Bates #1377-89 are being copied and will be sent to **The Duplicating Center (42 Chauncy Street, Suite 3A, Boston, MA 02111, phone (617) 728-0000 and fax (617) 357-5310)**. I expect that the videos will be there within the week and I will send a list of the counsel of record in this case to the Duplicating Center so that you can call the Center to order copies of the videos for your review. (When I send this letter to the Duplicating Center, I will send a copy of it to you).

d. Photographs (Bates #1250-1273). In addition to these photographs, there were photographs that were taken of the search of SANTIAGO's Plymouth Voyager minivan on October 15, 2004. Once these photographs are copied, I will send them to you.

e. Pen register data received for the Target Telephones 1, 2, 3 and 4 and the RIVERA cell phone (as identified below in Paragraph C) and 978-479-2026 (previously, 978-479-8210) used by TORRADO. A printout of this data should be available shortly and I will provide it to you; and

f. GPS data for SANTIAGO's Plymouth Voyager (Bates #1301).

4.   Reports of Examinations and Tests under Rule 16 (a)(1)(D)

Enclosed are the following documents:

1. DEA 7 reports reflecting the analysis of the heroin seized in this investigation (Bates #1123-1151; 1418-23).

2. As noted on the DEA 7 report regarding heroin seized on August 26, 2004 (Bates #1141), DEA requested fingerprint analysis of the container in which heroin was discovered. The October 22, 2004 report informing DEA that latent prints had been developed on this item is enclosed (Bates #1249). Since receipt of this report, DEA has been informed that the DEA Laboratory has identified a latent print on this container as that of Jose TORRADO. When I receive the written report reflecting this information, I will send it to you.

3. DEA also requested fingerprint analysis of the bag in which the heroin seized from Julio SANTIAGO's residence on October 15, 2004 was found (Bates #1144). When I receive the results of this analysis, I will send it to you.

4.  There was also analysis and examination of the firearm and three silencers seized from SANTIAGO's residence on October 15, 2004 conducted by the Massachusetts State Police and ATF.  The Massachusetts State Police reports reflecting the firearm testing, examination of the silencers for gunpowder residue and testing for latent prints are enclosed.  (Bates #1210-1216).  I have not yet received the ATF report regarding its examination of the firearm and silencers, but I will send it to you when I receive.  (Please note, however, that we have received an oral report that the silencers satisfy the federal definitions of firearm and silencer).

B.    Search Materials under Local Rule 116.1(C)(1)(b)

Search warrants were executed at the following locations on the following dates:

1. 261 Aiken Avenue, Lowell, (RODRIGUEZ's residence) on June 7, 2004;

2.    212 Wilder Street, Lowell, MA (MIRANDA's residence) on October 15, 2004;

3.    270 Fairmount Street, Fitchburg, MA (Carlos SANCHEZ's residence) on October 15, 2004;

4.  Mini Self Storage, 3 Foundry Street, Lowell, MA (TORREZ's space) on October 15, 2004;

5. 1994 Plymouth Voyager (SANTIAGO's vehicle) on October 15, 2004; and

6.  264 Mechanic Street, Leominster, MA (SANTIAGO's residence) on October 15, 2004; and

7.  235 18th Street, Dracut, MA (RIVERA's residence) on October 15, 2004.

Copies of the federal search warrants, applications, affidavit for the aforementioned searches were previously disclosed to you. (Bates #733-770).  Copies of the federal search warrant returns are enclosed.  (Bates #736A-B, 742A-B, 750A-B, 758A, 764A-B and 770A). Please note that the search warrant affidavit is the same affidavit that was filed in support of the criminal complaint that you received in connection with the detention hearings.    Reports regarding these searches are enclosed. (Bates #1093-98, 1115-1122; 1278-79).  Photographs of the results of the searches of RIVERA's residence, the Mini Self Storage location, Carlos SANCHEZ's

residence and SANTIAGO's residence at Bates #1250-72. As discussed above, photographs of the October 15th search of SANTIAGO's vehicle will be forthcoming.    The warrant, application, affidavit and report regarding the state search warrant of RODRIGUEZ's residence is enclosed.    (Bates #1240-48).

Consent search were conducted at the following locations on the following dates:

1.  Front garage at 270 Fairmount Street, Fitchburg (Carlos SANCHEZ's residence) on October 15, 2004 (Bates 1237;  1096-98);

2. Storage locker assigned to RIVERA's apartment at 235 18th Street, Dracut, MA on October 15, 2004 (Bates #1238; 1394-96);

3.  930 59th Street, Apt. 4, Brooklyn, NY (NUNEZ's apartment) on October 15, 2004 (Bates #1239; 1121-22);

4.  TORREZ's vehicle parked at, and a bedroom located in, 219 Black Brook Drive, Lowell on October 15, 2004   (Bates #1112-14); and

5.  19 Conlon Terrace, Lowell (REYES' residence) on October 15, 2004 (Bates #1106-09).

A description of the items seized during these consent searches are contained in the Bates documents referenced above. Although not required by Local Rule 116.1 (C)(1)(b), enclosed are copies of the written consent to search forms, if any were obtained, in relation to the referenced searches.

Items seized during the October 15, 2004 arrests of TORRADO and Luis SANCHEZ from their residences, respectively, are described in Bates #1100-1105. Items seized from the defendants' persons are listed on the respective DEA 7 and DEA 7A reports and DEA 6 reports enclosed.  An inventory search was conducted of a 1999 GMC Yukon (RIVERA's vehicle) on October 15, 2004 by the Lowell Police Department.    Enclosed is an inventory of evidence seized during that search.   (Bates #1236).

C.   Electronic Surveillance under Local Rule 116.1(C)(1)(c)

Wire and electronic communications, as defined in 18 U.S.C. §2510, of the defendants (except as to defendant SANTIAGO ARROYO) relating to the charges in the indictment were intercepted pursuant to court-authorized electronic surveillance as follows:

1.  On March 12, 2004, the Honorable Nancy Gertner authorized

the interception of wire communications occurring over 978-423-8173, a Nextel cellular telephone subscribed to in the name of RIVERA ("the RIVERA cell phone"). Interceptions over the RIVERA cell phone occurred between March 16, 2004 and April 1, 2004.

2. On May 28, 2004, the Honorable Patti B. Saris authorized the interception of wire communications occurring over 347-200-5004, a T-Mobile cellular telephone with no subscriber information, which was utilized by SANTIAGO ("Target Telephone 1"). Interceptions over Target Telephone 1 began on June 2, 2004 and were terminated on July 1, 2004.

3. On June 28, 2004, the Honorable Chief Judge William Young authorized the interception of wire communications occurring over 347-248-7669, a T-mobile cellular telephone with no subscriber information, which was utilized by SANTIAGO (hereinafter "Target Telephone 2"). Interceptions over Target Telephone 2 began on June 29, 2004 and were terminated on July 27, 2004.

4. On August 17, 2004, the Honorable Mark L. Wolf authorized the interception of wire communications occurring over Target Telephone 1 and Target Telephone 2. Interception of both phones began on August 17, 2004. Interception of Target Telephone 1 was terminated on September 13, 2004 and interception of Target Telephone 2 was terminated on September 7, 2004.

5. On September 9, 2004, the Honorable Mark L. Wolf in the United States District Court for the District of Massachusetts authorized the interception of electronic communications occurring over 978-788-0589, a paging device bearing a cap code of A009880984, operating on frequency 929.6625MHz, owned by Metrocall Wireless, 890 East Heinburg Street, Pensacola, FL 32502, and subleased to New England Paging, a reseller, at P.O. Box 1644, Lowell, Massachusetts, which was utilized by SANTIAGO ("the Target Pager"). On October 13, 2004, Chief Judge William G. Young authorized the continued interception of electronic communications over the Target Pager. Interceptions over the Target Pager began on September 14, 2004 and were terminated on October 15, 2004.

6. On September 29, 2004, the Honorable William G. Young authorized the interception of wire communications occurring over 917-815-3487, a pre-paid T-Mobile telephone, with no subscriber information other than a March 10, 1981 date of birth ("Target Telephone 3") used by SANTIAGO and 978-408-9075, a Sprint cellular telephone, subscribed to Paula Llano, 212 Wilder Street, Apartment 2, Lowell, Massachusetts ("Target Telephone 4") used by TAVO. Interception over Target Telephones 3 and 4 began on September 30,

8

2004 and were terminated on October 15, 2004.

The government intends to offer communications of the defendants intercepted pursuant to these orders as evidence in its case-in-chief.

A copy of the applications, supporting affidavits of DEA Task Force Agent Terry Hanson and court orders authorizing the interceptions of communications relating to the charges contained in the indictment were previously produced. (Bates #1-732). The court orders directing the sealing of intercepted communications under 18 U.S.C. § 2518(a) are enclosed. (Bates #1302-45). Copies of the intercepted calls and line sheets are enclosed. (Bates #1296-1300). A log of the interception of electronic communications over the Target Pager is attached at Bates #1280-84. Please note that the Protective Order entered by Chief Judge Young on October 19, 2004 (and previously provided to you and signed by you or your client's prior counsel) is still in effect. Except as otherwise provided in that Order, the defendants and their counsel shall make no disclosure of wiretap materials to any other person.

D.   Consensual Interceptions under Local Rule 116.1(C)(1)(d)

A written description of interceptions (as the term "intercept" is defined in 18 U.S.C. § 2510(4)) of wire, oral or electronic communications, relating to the charges contained in the indictment made with consent of one of the parties to the communication("consensual interceptions"), in which defendants RIVERA, REYES and ARROYO were intercepted and which the government intends to offer as evidence in its case-in-chief is set forth below. Copies of these recordings are contained on three disks that are enclosed. (Bates #1374-76). An index of the recordings contained on each disk (and identified by N#) is also enclosed.

1.   December 10, 2003 calls between DEA Task Force Agent Marcos Chavez acting in an undercover capacity ("UCA") and RIVERA (N-1).

2.   December 18, 2003 call between UCA and REYES (N-3).

3.   December 18, 2003 meet between UCA and REYES (N-4).

4.   January 7, 2004 calls between UCA and REYES (N-5).

5.   January 7, 2004 meet between UCA and REYES (N-6).

6.   January 14, 2004 call between UCA and REYES (N-7).

9

7.    January 14, 2004 meet between UCA and REYES (N-8).

8.    January 30, 2004 calls between UCA and REYES (N-9).

9.    January 30, 2004 meet between UCA and REYES (N-10).

10.    February 10-13, 2004 calls between UCA and REYES (N-11).

11.    March 17-19, 23, 2004 calls between UCA and REYES (N-14).

(Please note that there was a March 2004 call, consensually monitored by an agent, between CW#3 and REYES, but it was not recorded). The conversations on these tape recordings are primarily in English and Spanish. Although not required by Local Rule 116.1(C)(1)(d)(i), the government is producing reports relating to the consensual recordings described above. (Bates #820-51, 863-65).

E.    <u>Unindicted Coconspirators under Local Rule 116.1(C)(1)(e)</u>



[Redacted]

F.    <u>Identifications under Local Rule 116.1(C)(1)(f)</u>

As indicated below, the following defendants were the subjects of an investigative identification procedure used with a witness the government anticipates calling in its case-in-chief involving a photo spread or other display of an image of the defendant. A copy of the photo spread or image used in or memorializing the identification procedure is enclosed (unless otherwise noted):

1.    On January 5, 2004, CW #1 was shown a photograph of TORRADO and identified him as the "Jose" who had been selling him heroin as described in the criminal complaint in this matter. A copy of that photograph is shown on Bates #1273.

2.  On November 3, 2004, CW #1 was shown a photo array (Bates
#1274) and selected photograph #2 (photo of TORRADO) as "Jose" who
had been his supplier of heroin until TORRADO's arrest in this
matter in October 2004.

3.  On November 3, 2004, CW #2 was shown a photo array (Bates
#1274) and selected photograph #2 (photo of TORRADO) as "Jose" who
had been his supplier of heroin until TORRADO's arrest in this
matter in October 2004.

4.  REYES and ARROYO were identified from RMV photos shown to
DEA TFA Chavez (who, acting in an undercover capacity, purchased
heroin from them) as described in the attached reports at Bates
#820-22; 827-29.  Copies of the RMV photographs are shown on Bates
#1273.

The other defendants were not the subject of an investigative
identification procedure used with a witness the government
anticipates calling in its case-in-chief involving a line-up, show-
up, photospread or other display of an image of the defendant.
However, these defendants were identified using a variety of
investigative techniques and leads, including information from
confidential informants (N.B. confidential informants identified
RIVERA and TORRADO as well but the government does not anticipate
calling them as witnesses in its case-chief), by comparing the
photograph on his driver's license to live surveillance
observations of the defendants, motor vehicle stops, check of RMV
and utility records and other information.  Descriptions of same
are included in the reports at Bates #812-14, 919-20, 930-31, 957-
6s0, 966-75, 995-98, 1017-24, 1056, 1063-71, 1084-90, 1117-22.

## G.    Exculpatory Evidence Under Local Rule 116.2(B)(1)

With respect to the government's obligation under Local Rule
116.2(B)(1) to produce "exculpatory evidence" as that term is
defined in Local Rule 116.2(A), the government states as follows:

1.  Except as noted in this paragraph, the government is
unaware of any information that would tend directly to negate the
defendant's guilt concerning any count in the indictment.  The
government is aware of the following information that you may
consider to be discoverable under Local Rule 116.2(B)(1)(a):

a.  As to the seizure of the items found in attic space
at 264 Mechanic Street (SANTIAGO's residence), the government notes
that the entry to the attic was located in a common hallway that
was accessible from SANTIAGO's apartment and one other (unoccupied)
apartment.  Further information regarding this matter is contained

in Bates #1278-79.

2.    The government is aware of the following information that you may consider to be discoverable under Local Rule 116.2(B)(1)(b) (i.e., information that would cast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief and that could be subject to a motion to suppress or exclude):

a.    The search warrant for the Mini Self Storage Unit was for the first floor space (located behind white double doors as depicted in Bates #1258-59 and as described in Bates #753-54).    On the day of arrest at his residence, TORREZ denied knowledge of any storage space, but Yasenia Torres indicated knowledge of the space and provided the keys to the agents.    (Bates #1112-14).    Keys on this ring opened the storage space behind the white double doors and in a separate storage bin in a separate building as depicted in Bates #1262.    The report at Bates #1115-16 reports which items were seized from these spaces, respectively.

3.    The following promises, rewards, or inducements have been given to the following witnesses whom the government anticipates calling in its case-in-chief:

As to CW#1, the government notes that it has testified before the grand jury pursuant to an immunity order that is enclosed at Bates #1220-21.    Also attached at Bates #1217-19 is a proffer letter that the government provided to CW#1, but that was not accepted by CW#1's attorney.    The government notes that CW#1 was never charged after the surveillance of its meet (along with CW#2) with TORRADO in January 2004.

As to CW#2, the government notes that it has testified before the grand jury pursuant to an immunity order that is enclosed at Bates #1225-26.    Also attached at Bates #1222-24 is a proffer letter that the government provided to CW#2, but that was not accepted by CW#2's attorney.    The government notes that CW#2 was never charged after the surveillance of its meet (along with CW#1) with TORRADO in January 2004.

As to CW#3, the government notes that it received an immunity order for this witness to testify before a federal grand jury that is enclosed at Bates #1227-28.    CW#3 has not testified before the federal grand jury, but it was aware that the government was seeking an immunity order.    Also attached at Bates #1229-30 is a proffer letter that the government provided to CW#3.    The government notes that CW#3 was never charged after the surveillance of its drug transaction with REYES on January 7, 2004.

12

4.    The government is aware that the three cooperating witnesses (CW#1, CW#2 and CW#3) that it anticipating calling in its case-in-chief have criminal records.    Copies of those criminal records (redacted to conceal the identity of the cooperating witnesses) for these witnesses are enclosed as follows: CW#2 (Bates #1284-88); CW#1 (Bates #1289-91); and CW#3 (Bates #1292-95).

5.    Other than as may appear on the criminal records of CW#1, CW#2 and CW#3 (Bates #1284-95), the government is unaware that any of its named case-in-chief witnesses have any criminal cases pending.

As to CW#1, CW#2, CW#3, all of whom the government intends to call as witnesses in its case-in-chief, the government declines to identify them by name at this time pursuant to Local Rule 116.6. The government makes this declaration given its concern about the witnesses' safety and security.    The government notes, however, that it has made the requisite disclosures about these witnesses (without disclosing their identities).    (N.B. CW#1 and CW#2 are the individuals who were stopped after a January 5, 2004 meet with TORRADO; CW#3 is the individual who was stopped after a January 7, 2004 meet with REYES).

As to paragraphs 3-5 listed above, the government makes no disclosures regarding the confidential informants referred to in the wiretap affidavits (CI#1, CI#2, CI#3, CI#4 and CI#5) as it does not intend any of these individuals as witnesses in its case-in-chief at trial.

6.    The government is not aware that any percipient witnesses who failed to make a positive identification of a defendant with respect to the crimes at issue.

H.    Other Matters

The government is aware of its continuing duty to disclose newly discovered additional evidence or material that is subject to discovery or inspection under Local Rules 116.1 and 116.2(B)(1) and Rule 16 of the Federal Rules of Criminal Procedure.

The government requests reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure and Local Rule 116.1(D).

The government demands, pursuant to Rule 12.1 of the Federal Rules of Criminal Procedure, written notice of the defendant's intention to offer a defense of alibi.    The time, date, and place at which the alleged offenses were committed was set forth in the

affidavit filed in support of the criminal complaint in this case and indictment previously provided to you.

Although Local Rule 116.1(C)(1)(f) does not require the government to disclose the use or non-use of a voice identification procedure, the government notes that DEA TFA Marcos Chavez (who was the undercover agent for the REYES and ARROYO buys and one of the monitoring agents for the wiretap interceptions), did voice identification of the defendants between comparison of their voices from the wire intercepts and hearing them speak on October 15, 2004 during the booking process.

Although not required by the Local Rules, the government has made an early, voluntary production of documents that may be considered Jencks. (Reports at Bates #812 et seq.).

As required by Local Rule 116.4(A)(3), I will soon send one copy of the disks containing the consensual recordings and the wiretap interceptions to the jails where those defendants being detained in this case are being held. As to the defendants who are currently on release, I expect that counsel will share the copies of the recordings that are produced with this letter with their clients. If counsel would like additional copies of these CDs, please let me know and I will also send a set of the CDs to the Duplicating Center so that you can request copies of them at the defendant's expense pursuant to Local Rule 116.4(A)(2).

Please call the undersigned Assistant U.S. Attorney at the phone number below if you have any questions.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:

DENISE JEFFERSON CASPER
Assistant U.S. Attorney
(617) 748-3120

Enclosures:

Documents Bates #736A-B, 742A-B, 750A-B, 758A, 764A-B, 770A, 812-1423 [excluding Bates #1377-89 that are being sent to Duplicating Center]; Index to Bates #1374-76

14



**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts 02210*

December 17, 2004

Victoria Bonilla-Argudo, Esq.
Bourbeau & Bonilla
77 Central Street, 2nd Floor
Boston, MA 02109

Cathy Byrne, Esq.
Office of the Federal Defender
408 Atlantic Avenue, Third Floor
Boston, MA 02108

Valerie S. Carter, Esq.
Carter & D, LLP
530 Atlantic Avenue
Boston, MA 02210

John Cicilline, Esq.
387 Atwells Avenue
Providence, RI 02909

Carl Donaldson, Esq.
11 Beacon Street
Suite 600
Boston, MA 02108

Lenore M. Glaser, Esq.
25 Kingston Street
Boston, MA 02111

Robert Goldstein, Esq.
114 State Street
Boston, MA 02109

John D. Hodges
1360 Main Street
Tewksbury, MA 01876

John Palmer, Esq.
24 School Street
Boston, MA  02108

Tony Scola, Esq.
47 Harvard Street
Worcester, MA 02609

Roger Witkin, Esq.
6 Beacon Street
Suite 1010
Boston, MA 02108

        Re:  United States v. Julio Santiago et al.
             Criminal No. 04-10336-NMG

Dear Counsel:

     As mentioned in the December 9, 2004 automatic discovery
letter in the captioned case, I was awaiting receipt of several
documents.  Enclosed please find the following:

     1. Photographs of the search of SANTIAGO's Plymouth Voyager
minivan on October 15, 2004 (Bates #1496);

     2.  Printout of pen register data for Target Telephones 1, 2,
3, 4 and RIVERA's cell phone (Bates #1502-47).  When I receive the
printout of the pen register data for TORRADO's telephone, I will
forward it to you;

     3.  A report reflecting the identification of a latent print
on the coffee cup containing heroin seized on August 26, 2004 as
TORRADO's (Bates #1494);

     4.  Report reflecting the results of the fingerprint analysis
of the bag in which the heroin seized from Julio SANTIAGO's
residence on October 15, 2004 was found (Bates #1495); and

     5.  ATF reports regarding examination and (lack of)
registration of the silencers found in SANTIAGO's residence
(Bates 1497-1501); and

     6.  Criminal records of Juan Nunez and Julio Santiago (Bates
1548-49).

     Also enclosed are additional reports regarding the search of
264  Mechanic  Street  (Bates  #1442-45);  the  results  of  an

                              2

administrative subpoena served on Mini Self-Storage (Bates #1451-52); and the June 2004 and October 2004 arrests of Jose RODRIGUEZ (Bates #1453-58).

Also enclosed are reports regarding the surveillance and identification of Reynaldo RIVERA conducted in connection with the Kevin Rosas investigation, see Bates #812-15 previously produced, that preceded the investigation that led to the charges in this case.  These reports are attached at Bates #RR1-26.

Also enclosed are also additional surveillance reports (Bates #1459 *et seq.*) and three additional DEA 7A reports (Bates #1200A-C).

Please note that the videotapes previously sent to the **Duplicating Center (42 Chauncy Street, Suite 3A, Boston, MA 02111, phone (617) 728-0000 and fax (617) 357-5310)** were Bates stamped #1377-1388, not #1377-1389. There is no video (or document) marked #1389.  In addition to the videotapes that are already at the Duplicating Center, I am sending 4 videotapes (Bates #1424-1427) which are the video portions of N-4, N-6, N-8 and N-10 (as reflected in the DEA 7A reports previously produced) to the Duplicating Center as well.  The audio portion of those N-exhibits were produced with the December 9th automatic discovery letter. You can contact the Duplicating Center to order copies of the videos for your review.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: DENISE JEFFERSON CASPER
Assistant U.S. Attorney
(617) 748-3120

Enclosures:

Documents Bates #1200A-C; 1424-1549; RR1-36
[N.B. Bates #1424-27, video portions of N-4, 6, 8 & 10, have been sent to Duplicating Center]

3



**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

*Main Reception. (617) 748-3100*

*United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts  02210*

December 22, 2004

Victoria Bonilla-Argudo, Esq.
Bourbeau & Bonilla
77 Central Street, 2nd Floor
Boston, MA   02109

Cathy Byrne, Esq.
Office of the Federal Defender
408 Atlantic Avenue, Third Floor
Boston, MA   02108

Valerie S. Carter, Esq.
Carter & D, LLP
530 Atlantic Avenue
Boston, MA 02210

John Cicilline, Esq.
387 Atwells Avenue
Providence, RI 02909

Carl Donaldson, Esq.
11 Beacon Street
Suite 600
Boston, MA 02108

Lenore M. Glaser, Esq.
25 Kingston Street
Boston, MA 02111

Robert Goldstein, Esq.
114 State Street
Boston, MA 02109

John D. Hodges
1360 Main Street
Tewksbury, MA 01876

John Palmer, Esq.
24 School Street
Boston, MA   02108

Tony Scola, Esq.
47 Harvard Street
Worcester, MA 02609

Roger Witkin, Esq.
6 Beacon Street
Suite 1010
Boston, MA 02108

Re:   United States v. Julio Santiago et al.
      Criminal No. 04-10336-NMG

Dear Counsel:

As mentioned in the December 9, 2004 automatic discovery letter and my December 17, 2004 supplemental letter in the captioned case, I was awaiting receipt of the pen register data for TORRADO's telephone. A copy of that data is attached. (Bates #1550-70). Also enclosed are photographs of trash pulls from RIVERA's residence on July 17, 2003 and December 10, 2003 and reports regarding same. (Bates #1571-84).

As a supplement to the last paragraph of Section B in the December 9th automatic discovery letter, please note that a description of the seizure of approximately 20 grams of heroin from RIVERA's vehicle on June 7, 2004 was previously disclosed in Bates #1137 and 1474-75.

Pursuant to Local Rule 116.5(A)(3), the government does not anticipate receiving any additional discovery to produce at this point. The government, however, is aware of its continuing duty to disclose newly discovered additional evidence or material that is subject to discovery or inspection under Local Rules 116.1 and 116.2(B)(1) and Rule 16 of the Federal Rules of Criminal Procedure.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:

DENISE JEFFERSON CASPER
Assistant U.S. Attorney
(617) 748-3120

Enclosures: Documents Bates #1550-1584

2



**U.S. Department of Justice**



*United States Attorney*
*District of Massachusetts*

_____

*Main Reception: (617) 748-3100*                     *United States Courthouse, Suite 9200*
                                                      *1 Courthouse Way*
                                                      *Boston, Massachusetts 02210*

February 1, 2005

**VIA TELECOPIER & REGULAR MAIL**
**Fax# 617-523-2024**

Roger Witkin, Esq.
6 Beacon Street
Suite 1010
Boston, MA 02108

        **Re:  United States v. Santiago et al.**
             **Criminal No. 04-10336-NMG** _____

Dear Counsel:

        This letter is in response to your discovery letter on behalf
of your client, Juan Nunez, in the referenced matter.  I have
addressed each of your requests below.

        *Request No. 1 (Regarding information regarding "informers")*.
The government objects to this request.  To the extent that this
request seeks information about confidential informants whom the
government does not intend to call as witnesses at trial, the
government objects to this request.  To the extent that this
request seeks information about cooperating witnesses that the
government intends to call at trial, the government has already
made the requisite disclosures about CW#1, CW#2 and CW#3 in its
automatic discovery letter pursuant to Local Rules 116.1(C) and
116.2(B)(1) and will make the requisite disclosures under Local
Rule 116.2(B)(2) and Fed. R. Crim. P. 26.2 (regarding *Jencks*
material) in the time and manner provided in those rules and Local
Rule 117.1(A)(4),(5).   To the extent that this request seeks
evidence that is broader than the categories under these rules or
earlier than these rules require, the government objects.

        *Request No. 2 (Regarding the government's intention to offer
evidence under Residual Hearsay Exception under Fed. R. Evid. 807)*.
The government does not presently intend to offer any evidence at

trial under Fed. R. Evid. 807.  The government, however, does not concede that the "advance" notice of such intention is required to be made at this time, particularly in light of the fact that no trial date has been set yet.  The government proposes that if it forms any intention to offer any evidence under Fed. R. Evid. 807 that it give advance notice of same to counsel 21 days before trial along with the disclosures that it is required to make under Local Rule 117.1(A).

Request No. 3 (Regarding disclosure of intention to offer F. R. Evid. 404(b) evidence).  The government objects to this request. Unless a defendant has declined to participate in automatic discovery, the government is required to disclose a general description of any crime, wrong, or act that it proposes to offer under Fed. R. Evid. 404(b) to the defendant twenty-one days before trial and will do so at that time.  Local Rule 117.1(A)(4)(b).  To the extent that this request seeks disclosure that is broader than the Local Rules requires or earlier than the Local Rules require, the government objects.

Request No. 4 (Regarding disclosure of intention to offer Fed. R. Evid. 608(b) evidence).  The government objects to this request. This request is covered by automatic discovery under Local Rule 116.1(C) (including the incorporation of Local Rule 116.2) and, therefore, it is barred by Local Rule 116.3(D).  The government notes that it is required to disclose a written description of any conduct that may be admissible under Fed. R. Evid. 608(b) known by the government to have been committed by a witness whom the government anticipates calling in its case-in-chief twenty-one days before trial and will do so at that time.  Local Rule 116.2(B)(2)(f).  To the extent that this request seeks disclosure that is broader than the Local Rules requires or earlier than the Local Rules require, the government objects.

Request No. 5 (Regarding prior convictions of Fed. R. Evid. 609).  The government objects to this request as the government is not aware of any rule requiring it to give advance notice to the defendant of its plan to impeach his testimony with use of a prior conviction.  The government notes that a copy of your client's criminal record was previously provided in automatic discovery (and by PTS in connection with the detention hearing).  Your client should assume that the government may seek to impeach his testimony with any prior conviction that would be admissible under Fed. R. Evid. 609.

If you have any questions about this matter, please feel free to contact me at the telephone number below.

2

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:    Denise Jefferson Casper
       Assistant U.S. Attorney
       (617) 748-3120

cc: Ms. Noreen Russo,
    Chambers of The Honorable Robert B. Collings,
    U.S. Magistrate Judge

3