UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES

V.                                     CRIMINAL NO. 04-10336

JUAN NUNEZ

### DEFENDANT'S SENTENCING MEMORANDUM

Juan Nunez ("Nunez," or "the Defendant"), in the above-numbered Indictment submits the following Memorandum for the consideration of this Court upon Sentencing.

**Facts.**

**1. Personal Background.**

Enough is known about Nunez' life to safely say that he brings no special, remarkable or distinguishing features – good or bad – to his disposition before this Court.

Nunez was born and raised in the Dominican Republic. He has many siblings, most of whom have been in the United States under lawful status for some time, and who live legitimate and gainfully employed lives in this Country. Nunez came to the United States in 1990, along with his Mother. Although he has enjoyed the status of a permanent resident, the present case will have for him troubling echoes with INS.

Nunez has a daughter – Lisette – who was born to him and one Ms. Penã in 1993. Although Ms. Penã is no longer a factor in his life, Nunez maintained a good relationship with his Daughter, speaking with her frequently over the telephone, even during his detention, until Ms. Penã's telephone was apparently disconnected.

The Defendant married Paola Frey in April of 2000, a union which produced one son, Adonis. He maintains good relations with them both, and has seen them frequently during his detention. His wife supported him at trial of this case.

2. **Criminal History.**

Nunez' criminal record contains one blot which is of no significance to the present case. Nearly nine years ago, he was charged in the Kings County, New York Supreme Court with a count of heroin possession. He was not imprisoned, but paid a modest fine and surcharge.[1] The Probation Department has assessed him with one criminal history point, resulting in a Criminal History Category I, the lowest possible level. The Defendant assigns no error in this reckoning.

3. **Facts of the case.**

The offense conduct in this case involved a multi-defendant effort, over a period of time, to possess and distribute heroin, a Scheduled Substance. Nunez was named in only one Count – the conspiracy Count – of an Indictment as one of the transgressors in the scheme. There was a Superseding Indictment in which, once again, Nunez was named solely in the conspiracy Count. He does not deny responsibility for *certain* of his criminal conduct.

At page 12 of the original Indictment, ¶17, the Government alleged that Nunez was accountable for "at least one kilogram but less than three kilograms of heroin." By the time the Indictment had been handed up, the Government's

---

[1] It is not clear that he was even convicted of the offense – upon information and belief, the State of New York's criminal procedure structure contains a method of dealing with one-time or minor offenders similar to that of the Commonwealth of Massachusetts known as a 'continuance without a finding.'

2

investigation was over. The specific wrongful acts attributable to each defendant were then known to the Government and it charged accordingly.

The superseding Indictment counted Nunez responsible for the same weight – one to three kilograms of cocaine. To Counsel's knowledge, the Government did not add a 'notice of additional facts' for the Jury's consideration at trial. The Jury convicted Nunez on the conspiracy count, and specifically found that the conspiracy involved one or more kilograms of heroin.[2]

Subsequently, however, there was a dramatic change made in the assessment of the Defendant's accountability.

One of Nunez' co-defendants, Julio Carrion Santiago ("Santiago"), evidently made regular trips to Brooklyn, New York – where Nunez lived – from late July, 2004 until mid-October, 2004. It was the Government's theory that in each of those trips, Nunez was supplying Santiago with quantities of heroin. Of those trips – seven, all told – only one resulted in a seizure of heroin by Government Agents. That was the October 15, 2004 journey which the Government interdicted and seized approximately half a kilogram of heroin. None of the other six trips resulted in seizures. That is, those voyages did not produce actual confiscations of contraband attributable to Nunez. Other than the October 15 seizure, nothing – *nothing* – was directly connected to Nunez.

Absent further concrete evidence against the Defendant, the Government elected to do some speculating. At page 49 of its rendition of fact for the Probation Department, the Government had this to say:

> ...the government ascribes between three and ten

---

[2] See Exhibit "A," attached hereto, the Verdict Form, question 6.

3

kilograms of heroin to NUNEZ (sic). This calculation is based upon the reasonable inference that SANTIAGO was picking up approximately one-half a kilogram of heroin (or 500 grams) during each trip to Nunez's residence in Brooklyn, New York.

This Court's Probation Department, without any tangible evidence against Nunez but for the half kilogram already cited, concurred with the Government's guesswork. "Based upon the preceding analysis, the Probation Office believes it is reasonable to hold the defendant accountable for a quantity of heroin in excess of three, but not more than ten." February 16, 2007 Revised [Nunez] Presentence Report, ¶134.[3] Hence, the Probation Department calculated the unfortunate Nunez' base offense level at 34. Id. Had the Probation Department premised its calculus on the *actual* weight connected to Nunez, his base offense level would have been set at 32. See U.S.S.G. §2D1.1(c)(4). According to the Guidelines table, the lower end of the sentencing range at level 32 indicates approximately a ten-year commitment. The higher end of the sentencing range at level 34 represents a commitment in excess of fifteen years.

The additional weight attributed to Nunez has not been established by a preponderance of the evidence, let alone beyond a reasonable doubt.

**Argument.**

**1. Post-*Booker* Sentencing.**

In March of last year, the First Circuit decided United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006), establishing a sentencing protocol "as clearly as can be possible" in the aftermath of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).

4

The beginning of the Court's opinion makes it unambiguous that "reasonableness" is the touchstone of post-Booker sentencing.[4] Hand-in-glove with that precept, the Court found that the United States Sentencing Guidelines were not "presumptively controlling," and that a Guidelines sentence was *not* "per se reasonable." 440 F.3d 518. Although the Guidelines are not simply "another factor" in the process of disposition, "[they] are still *generalizations*." *Id.*, emphasis in original.

"*Booker's* remedial solution makes it possible for courts to impose non-guideline sentences that override the guidelines, subject only to the ultimate requirement of reasonableness." *Id.*

The holding in Booker has permitted the statutory sentencing mandates of 18 U.S.C. "3553[5] to emerge with new vitality and prominence, where they were, pre-Booker, effectively trumped. Or at least neutralized. Indeed, in his concurring Opinion, Judge Torruella states unequivocally:

> Finally, I think it is of *critical importance* that the majority opinion be understood to reinforce our commitment to the statutory requirement that, *in all cases*, district courts must impose sentences that are 'sufficient, but not greater than necessary' to effectuate the goals of criminal punishment, as articulated in 18 U.S.C. § 3553(a). In articulating its reasons for imposing any sentence, the district court must make clear reference to this *central principle*.

---

[3] This was, of course, pure speculation.

[4] "[S]entences would be reviewable for reasonableness whether they fell within or without the guidelines." Jimenez-Beltre, at 440 F.3d 517.

[5] Section 3553 has been raised pointedly in Defendant"s original Sentencing Memorandum. Because Jimenez-Beltre post-dates that document, the Court may forgive its further reference in the instant document.

*Id.*, at 440 F.3d 521, emphasis supplied.

In *his* Concurring Opinion, Judge Howard put an even finer point on it:

> The so-called "parsimony" provision, which requires that sentences be only as long as necessary to serve the purposes listed in section 3553(a)(2), has received scant attention from courts. Commentators note that this provision " 'is not just another factor' to be considered along with others set forth in Section 3553(a)" -- it sets an independent limit on the sentence a Court may impose.

*Id.*, at 440 F.3d 526, citations omitted. Judge Howard also observed that the "parsimony" provision is the lead-off language in §3553. It is a charter clause, governing those sentencing provisions which follow it.

The Probation Department's calculus of Nunez' offense level and criminal history score places him in the 151-188 month Guidelines range. This is about twelve and a half to over fifteen years. Additionally, Nunez will face INS proceedings as the result of his present conviction.

The Defendant recognizes and acknowledges the gravity of his offense, and accepts the fact that he will necessarily endure a period of incarceration. Even so, he urges this Court to undercut the Guidelines range, which is no longer "presumptive," no longer mandatory.

A strict Guidelines sentence here would be fundamentally unfair. A lesser sentence would adequately reflect the severity of the offense and provide just punishment. It would deter – insofar as deterrence may be effected -- others from similar acts. It would certainly prevent Nunez from any public criminal behavior, and it would provide him with educational and other corrective

treatment measures. It would not require a sentence in a level 34 range, in the Defendant's case, to accomplish these goals. And this Court, even if it accepted the lower weight attribution argued below, would *still* not be bound by the lower presumptive sentencing range.

The present offense, albeit the conspiracy was temporally somewhat extended, for Nunez effectively a single deviation from an otherwise unremarkable life. A life not pockmarked – but for a single nine-year-old possessory crime – by sociopathic behavior. To warehouse him for the substantial portion of his life a level 34 calls for would be an unwarranted shame.

### 2. The *Blakely* Issue.

Nunez also claims umbrage under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2541 (2004) which held that any element of proof, any fact, which would increase the length of a defendant's sentence upon conviction was required to be proved to a jury, beyond a reasonable doubt. Such was not the case here. Concededly, the Government has demonstrated the Defendant's involvement in the conspiracy to the extent of one to three kilograms of heroin. But it has not, by a long shot, implicated him in the three to ten kilogram realm. It offered no notice of additional facts, nor did it prove to the Jury beyond a reasonable doubt that the elevated estimate was true.[6]

This amounted to post-conviction manipulation of the facts by the

---

[6] The Defendant understands that drug weight, in this Circuit, is a 'sentencing factor' determinable by a Judge under the standard of a 'preponderance of the evidence.' United States v. Malouf, 466 F.3d 21 (1st Cir. 2006). As is Nunez' right, however – until the Supreme Court resolves the issue for all Courts, he assigns that the Apprendi and Blakely decisions inescapably require proof of drug weight beyond a reasonable doubt. See United States v. Malouf, 377 F.Supp.2d 315 (D. Mass. 2005).

7

Government and acceptance of the Government's representation by the Probation Department.

### 3. Judicial Estoppel.

The Defendant assigns that the Government ought be barred from asserting its *post-factum* elevated weight claim perforce the doctrine of judicial estoppel.

Effectively, the Government had three opportunities to claim the specific criminal liability of the Defendant. The Indictment, the Superseding Indictment, and its capacity to file a notice of additional facts before the Grand Jury. The Government did none of these, the case was not 'charged as proved, proved as charged.'[7]

All evidentiary factors in this case were known, or ought to have been known, to the Government at the time of its presentment to the Grand Jury. Certainly, had it wished to, the Government could have brought its information concerning the additional weight in the superseding Indictment. Or even a second Superseding Indictment. It is not out of the realm of possibility that the United States Attorney's Office did not do so because the 'evidence' was weak, and would not have passed 'beyond a reasonable doubt' muster. For all that it appears, the Government is now attempting to 'backdoor' the subject information, in the hopes that it can weather the lesser standard of proof. The Government should be precluded from so doing.

---

[7] See, for example, Berger v. United States, 78, 82, 55 S.Ct. 629 (1935) – "(1)...the accused shall be *definitely* informed as to the charges against him, so that he may be enabled to present his defense and not betaken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense." Emphasis supplied.

8

> The primary concern of the doctrine of judicial estoppel is to protect the integrity of the judicial process. See Note, *Judicial Estoppel: the Refurbishing of a Judicial Shield*, 55 Geo. Wash. L. Rev. 409, 434 (1987); Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 N.W.U.L. Rev. 1244, 1248 (1986). In *Patriot Cinemas v. General Cinema Corp.*, 834 F.2d 208, 212 (1987), this court recognized that in certain constrained circumstances a party might be precluded from 'asserting a position in one legal proceeding which is contrary to a position it has already asserted in another.' We recognized that this doctrine, which we called 'judicial estoppel,' had 'rather vague' contours. *Id*. Nevertheless, we concluded that 'intentional self-contradiction' should not be 'used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.' *Id*., (quoting *Scarano v. Central R.R. Co.*, 203 F.2d 510 (3rd Cir. 1953)). If such a tactic was attempted, the court was justified in acting to deny the unfair advantage. *Id*. In this Circuit, then, when a litigant is 'playing fast and loose with the Courts,' that party will be precluded from asserting a position inconsistent with a position he or she took in an earlier proceeding. *Patriot Cinemas*, 834 F.2d at 212. Accord, *United States v. Kattar*, 840 F.2d 118, 129-30 n.7 (1st Cir. 1988).

United States v. Levasseur, 846 F.2d 786, 792 (1st Cir. 1988).

Here, *by its own words in the charging document*, the Government took a specific position. Now, it takes another which is not consistent with its first language of accusation. It should not be permitted to profit by doing so. The Government should be judicially estopped from offering the 'evidence' it seeks to offer, and such information should not be part of this Court's consideration in sentencing Mr. Nunez.

### 4. The Calculus of the Drug Weight.

The Government will ask this Court to credit its speculation that Nunez bears the responsibility of three to ten kilograms of heroin for purposes of his

9

sentencing. It is no secret in this District that the Government, at times of sentencing and absent an agreement, customarily presses for the most severe sentence it can possibly calculate. This does not mean that the Government seeks equity by doing so, nor does it mean that this Court must accept the Government's representations, even if the Probation Department has.

> In cases involving disputed amounts of drugs, we believe [the law] requires the production of reliable information from which the court can reasonably conclude that the defendant, more likely than not, was *actually* responsible for a quantity of drugs at least equal to the threshold necessitated by the targeted offense level. * * * [I]f the exact amount [of drugs] cannot be determined, an estimate will suffice, but here also *a preponderance of the evidence must support the estimate*. Thus when choosing between a number of plausible estimates of drug quantity...*a Court must err on the side of caution*.

United States v. Sklar, 920 F.2d 107, 113 (1st Cir. 1990), citing to United States v. Walton, 908 F.2d 1289, 1301 (6th Cir.), *certiorari* denied, 498 U.S. 906, 111 S.Ct. 273 (1990), emphasis added, third parenthetical in original. The Sklar Court provides fact examples in which 'estimates' were found to be reasonable. In United States v. Hilton, 894 F.2d 485 (1st Cir. 1990), a mid-ocean boat interception took place. A Government agent seized a plastic-wrapped package which later proved to contain several pounds of marijuana. He saw several more identically wrapped packages but could not retrieve them.[8] The Court found it was reasonable to infer the unseized containers also contained marijuana. In another case, there was evidence that a particular person had made drug sales

---

[8] The boat was on fire.

previous to his arrest. Although at the arrest no drugs were found, a large amount of cash *was* found. The Court permitted the estimate that the cash represented the proceeds of a particular weight of drugs.[9] United States v. Gerante, 891 F.2d 364 (1st Cir. 1989).

A Court's method of drug estimation must be a "conservative approach" [Sklar, *supra*, at 920 F.2d 112-114], and "...*where significant uncertainty exists, those findings [must] err on the side of caution.*" United States v. Rivera-Maldonado, 194 F.3d 224, 233 (1st Cir. 1999).[10] "Indeed, rote multiplication of quantities from a single exchange is, taken alone, *an improper method* for determining overall drug quantities." United States v. Laboy, 351 F.3d 578, 584 (1st Cir. 2003), citing to Rivera-Maldonado at 194 F.2d 233, emphasis supplied. Rather,

> [the] probable accuracy [of drug approximations] must be founded on adequate indicia of reliability, United States v. Webster, 54 F.3d 1, 5 (1st Cir. 1995), and demonstrable record support, see, e.g., United States v. Marrero-Ortiz, 160 F.3d 768, 780 (1st Cir. 1998) ('[Absent particularized findings to support the assigned BOL, we have no principled choice but to vacate the sentence and remand for further findings and resentencing.'); United States v. Welch, 15 F.3d 1202, 1215 (1st Cir. 1993)... .

Rivera-Maldonado, at 194 F.3d 228-229.

The Rivera-Maldonado case involved multiple drug transactions which were not interdicted, and so the Government could not know the specific weight of each exchange nor, for that matter, the aggregate weight. Because the Government's evidence could not support its extrapolation, the Court remanded

---

[9] Likely premised on testimony indicating the 'going price' for the drugs.

11

the case for resentencing.

In the present case, as in the example in <u>Laboy</u>, the Sovereign's deductions are based upon "rote multiplication of quantities from a single exchange." This is a method which is far too susceptible to error. It simply does not satisfy the specific requirements of proof intended to foreclose such error. The estimate in the present case most certainly does not possess the strength to justify Mr. Nunez' exposure to a loss of liberty of more than *five years* beyond the already considerable ten-year minimum mandatory imprisonment he faces.

While the Defendant does not deny the gravity of his present conduct, he is nonetheless entitled to as equitable a sentencing treatment as the Guidelines will permit, that is, a sentence only so severe as to satisfy the ends of 18 U.S.C. §3553.

Therefore, the Defendant asks this Court to disregard the speculative information proposed by the Government and accepted by this Court's Probation Department, and to sentence Nunez at the lower end of a level 32 sentencing range – that is, to the minimum mandatory commitment and no more. Such a sentence is certainly adequate under §3553 to serve the ends of justice and retribution, but to serve also the ends of corrective rehabilitation treatment for the Defendant.

---

[10] For example, the <u>Laboy</u> Court substantially reduced the Government estimate of weight.

*s/Roger Witkin*
ROGER WITKIN
6 Beacon Street, Suite 1010
Boston, Massachusetts  02108
Tel. (617) 523-0027
Fax (617) 523-0024
BBO# 531780

DATED:     March 7, 2007

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES

V.                                   CRIMINAL NO. 04 10336 NMG

JUAN NUNEZ

## CERTIFICATE OF SERVICE

I, Roger Witkin, Counsel to the Defendant in the foregoing-captioned Indictment, hereby certify that I have served copies of the within *Defendant's Sentencing Memorandum* upon the Government and the United States Department of Probation by mailing same, first-class postage prepaid, to the respective parties at their addresses of record on the date entered on the signatory page of this pleading and by e-filing this date.

                                            s/Roger Witkin
                                            ROGER WITKIN

DATE:       March 7, 2007