UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 04-10336-NMG |
| JUAN NUNEZ ) | |
| Defendant ) | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William F. Bloomer, Assistant U.S. Attorney, submits its Sentencing Memorandum with respect to Juan Nunez ("Nunez").[1]

### INTRODUCTION

*Nunez was a New York based source of supply for Julio Santiago, who was the head of a massive heroin distribution enterprise operating in the Lowell / Fitchburg areas. In just one four-month time span in 2004, Nunez received seven confirmed visits from Santiago to transfer upwards of 500 kilograms of heroin per trip. At the conclusion of the investigation on October 15, 2004, agents stopped Santiago on his return trip to Massachusetts after having met in New York with Nunez and discovered 493.3 grams of heroin hidden in a sophisticated trap inside his mini van.*

To determine a defendant's final sentence, this Court must follow the three-step sentencing approach espoused by the First Circuit. United States v. Dixon, 449 F.3d 194, 204 (1st Cir. 2006); United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc);

---

[1] As this Court is aware, following a ten-day trial in October 2006, a jury returned guilty verdicts against five of the eleven codefendants in this case –Julio SANTIAGO, Juan NUNEZ, Carlos COLON (a/k/a Pedro MIRANDA), Jose RODRIGUEZ, and Carlos SANCHEZ -- with respect to Count One of the Superseding Indictment. The jury also found Julio Santiago guilty of the firearms offenses set forth in Count Seven, namely, possession of firearms in furtherance of a drug trafficking crime, and possession of unregistered firearms, to wit: silencers, (Count Eight). The jury further found that the conspiracy as a whole was responsible for more than 1,000 grams of heroin. With the exception of Enrique AGOSTO, who was severed from his co-defendants for the purpose of trial, the remaining six codefendants have pleaded guilty.

United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005). First, this Court must calculate the advisory guideline range. E.g., United States v. Pho, 433 F.3d 53, 61 (1st Cir. 2006). Second, the Court must determine whether any traditional departures apply to the case at hand. E.g., United States v. Saez, 444 F.3d 15, 17 (1st Cir. 2006). Finally, the Court needs to determine whether any factors put forth in 18 U.S.C. § 3553(a) offer a persuasive reason to impose a sentence outside of the proposed guideline range. E.g., Robinson, 433 F.3d at 35.

## ANALYSIS

According to the Presentence Report (PSR), Nunez is a Criminal History Category I. (PSR ¶¶ 144-146). Being responsible for between three and ten kilograms of heroin, his Base Level Offense is 34. (PSR ¶ 134). Because no other departures apply, Nunez's Total Offense Level (TOL) is 34 and his Guideline Sentencing Range (GSR) is 151 to 188 months. (PSR ¶¶ 135, 141, 199). He faces a statutory mandatory minimum of 10 years' imprisonment. (PSR ¶ 198).

At co-defendant Santiago's sentencing hearing on March 13, 2007, this Court determined that Santiago was responsible for between one and three kilograms of heroin. Should the same finding obtain here, Nunez's Base Offense Level (and hence his TOL) would be 32 and his corresponding GSR would be 121 to 151 months.

The government recommends a period of 151 months' incarceration to be followed by a term of 5 years' supervised release. The recommended term of incarceration falls within both the TOL 32 and TOL 34 calculations. Given the factors set forth in 18 U.S.C. §3553(a), imposing the minimum possible sentence (10 years or 121 months) would clearly send the wrong message to others given the nature and gravity of the defendant's offense. To reflect the

seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence and to protect the public, a term of 12 years' incarceration is reasonable, United States v. Jiminenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006)(en banc), if not downright gracious.

      **A**      **Importance of the Guideline Range.**

Even though the guidelines are advisory, the First Circuit has ruled that the guidelines remain a central component of any sentencing post-Booker. Jiménez-Beltre, 440 F.3d at 518; see also United States v. Kandirakis, No. 04-10372-WGY, 2006 WL 2147610, at *10 (1st Cir. August 1, 2006) (stating "the Guidelines - and their judge-made factual findings - are still the driving force behind federal sentencing"). The First Circuit explained that the "guidelines remained 'an important consideration' because they represented the only 'integration of the multiple factors' identified in the statute, often reflected past practice, and bore the imprimatur of the [Sentencing Commission] expert agency charged with developing them." United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006), quoting Jiménez-Beltre, 440 F.3d at 518. The continuing importance of the guidelines is such that the more the judge's sentence differs from the advisory guideline range - either higher or lower - the more compelling the judge's justification must be for the atypical sentence. See Kandirakis, 2006 WL 2147610, at *11; United States v. Thurston, No. 05-2271, 2006 WL 2065404, at *4 (1st Cir. July 26, 2006); Smith, 445 F.3d at 4.

The importance of the final guideline range has nothing to do with the guidelines' former mandatory status, which was eliminated in Booker. Instead, reasonableness is judged in relation to the guidelines for three reasons adopted by the First Circuit in United States v. Jiménez-Beltre: (1) only the guidelines comprehensively examine the full panoply of sentencing

3

considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities. See 440 F.3d at 518. Congress explicitly created the Sentencing Commission and guidelines to achieve these ends. Id.

The continued adherence to the now advisory guidelines remains evident in appellate courts across the country. While courts have repeatedly reversed as unreasonable sentences outside the applicable guideline ranges,[2] reversals of sentences imposed within the guideline range have been extraordinarily rare. Kandirakis, 2006 WL 2147610, at *43 n.36; see also United States v. Cooper, 437 F.3d 324, 331 (3d Cir. 2006) ("[I]t is less likely that a within-guidelines sentence, as opposed to an outside-guidelines sentence, will be unreasonable"); United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005) ("[I]t will be rare for a reviewing court to say [a within-Guidelines sentence] is 'unreasonable.'"). Indeed, in the post-Booker era, only one within-guidelines sentence has been found blatantly unreasonable. United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006) (sentence based on comparison to co-defendant's sentence found unreasonable). Furthermore, just two additional sentences have been reversed where the appellate court determined that the district court judge failed to provide an adequate explanation of the within-guidelines sentence. United States v. Carty, 453 F.3d 1214 (9th Cir. 2006); United States v. Vonner, 452 F.3d 560 (6th Cir. 2006). Moreover, the First Circuit and its

---

[2]See, e.g, Zapete-Garcia, 447 F.3d at 60 (holding that defendant's forty-eight month sentence – eight times the maximum of the advisory sentencing guideline range – was unreasonable as the district court failed to provide a reason for such a mammoth variance and neither defendant's prior deportations or arrest justified the increase); Smith, 445 F.3d at 5-6 (finding that defendant's forty-six month sentence – less than half the minimum advisory guideline range – for six counts of crack distribution and one count conspiring to sell narcotics was unreasonable as the defendant's minor role was taken into account in the guideline calculation and the defendant had previously sold narcotics near schools, violated post-arrest release terms, and had no better than usual rehabilitation prospects).

sister circuits have emphasized that the further outside the range, either above or below, a sentence falls, the stronger must be the justification for such disparate sentencing.

Here, the record – in the form of evidence introduced at trial and the reliable information set forth in the PSR – clearly supports the finding that Nunez was responsible for between one and three kilograms, if not three and ten kilograms of heroin. (PSR ¶¶ 106-115, 132-134). See United States v. Panet-Collazo, 960 F.2d 256 (1st Cir. 1992) ("We review a trial court's findings of fact under the Sentencing Guidelines only for clear error"). Indeed, the defendant's thoughtful sentencing memorandum concedes liability attaching to between one and three kilograms of heroin. (D.Br. 12).[3]

According to GPS data and physical surveillance, Santiago made ten trips to Brooklyn and Elmhurst, New York between July and October 2004. (PSR ¶ 112). Probation conservatively estimated the amount of heroin attributable to Nunez by assigning 500 grams of heroin only for the trips that Santiago made to Nunez's residence in Brooklyn, New York. (PSR ¶ 133). Probation further arrived at this calculation by extrapolating a figure from the amounts of heroin that Santiago distributed to his mid-level customers during this time period – specifically noting that the calculation did not include an additional 500 grams from Santiago's

---

[3]Nunez contends that the government should be estopped from arguing that he is responsible for between three and ten kilograms of heroin because the initial indictment alleged in a "Notice of Additional Factors" that he was accountable for between one and three kilograms of heroin. (D.Br. 8-9). The argument is incorrect because it convolutes the burden of proof at trial (beyond a reasonable doubt) and sentencing (preponderance of the evidence). Here, the initial indictment with its Notice of Additional Factors was issued in the aftermath of Blakely v. Washington, 542 U.S. 296 (2004), but before United States v. Booker, 543 U.S. 220 (2005). After Booker made the Sentencing Guidelines advisory, the Superseding Indictment was returned against the defendant absent the Notice of Additional Factors. The government is not precluded from arguing a greater quantity of heroin from that specified in the original indictment based upon a finding of the preponderance of the evidence, see United States v. Yeje-Cabrera, 430 F.3d 1,17-18 (1st Cir. 2005).

first trip to Brooklyn, New York on July 25, 2004. It would not be clear error to find by a preponderance of the evidence that Nunez was responsible for between three and ten kilograms, let alone one and three kilograms of heroin, based on this record.

     **B.**    **Application of the § 3553(a) Factors.**

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing. Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing, which, as explained above, is best accomplished through faithful application of the guidelines. The other 3553(a) factors also point to this conclusion. While all § 3353(a) factors must be considered by this Court, "it is not required to address those factors, one by one, in some sort of rote incantation when explicating its sentencing decision." Dixon, 449 F.3d at 205; see also United States v. Navedo-Concepcion, 450 F.3d 54, 57-58 (1st Cir. 2006) (reasoning that in every decision the main factors contributing to the sentence must be identified by the sentencing court, but there is no "requirement for a lengthy or detailed recitation or one addressing every claim and counter-argument; rather, the reviewing court needs, and both parties deserve, a *specific* explanation and not just a reference to the evidence.").

Aside from a genetic heart murmur and "stomach issues," Nunez is a healthy 34-year-old male. (PSR ¶¶172-174). He denied having any mental or emotional problems and does not feel the need for psychological assistance (PSR ¶175). Nunez further denied having a substance abuse problem. (PSR ¶ 177). Although he has limited education (PSR ¶177), he claims to have supported himself through regular employment over the years. (PSR ¶¶ 182-183).

In short, the PSR reflects nothing unusual or extraordinary in Nunez's background to

justify taking him outside of the heartland of cases already addressed by the Sentencing Guidelines.  C.f., Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035, 2047 (1996) ("[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline").

Nunez chose to supply massive quantities of heroin to Julio Santiago.  Santiago in turn injected that poison into the Greater Lowell community with the assistance of several underlings simply as a means to make money.  The amount of pain, addiction, and crime that Nunez and his co-conspirators have contributed to is incalculable.  Nothing should steer him outside the federal sentencing guideline range.  See United States v. Thurston, No. 05-2271 (1st Cir. July 26, 2006) (discussing Congressional goal of promoting national uniformity in sentencing).

C. **Sentence**

The government recommends a term of 151 months' imprisonment with 5 years' supervised release.  In light of the massive quantity of heroin that the defendant is accountable for, the government's recommendation is reasonable, United States v. Jiminenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006)(en banc), and in accord with the overarching principles and policies expressed and incorporated in the Sentencing Guidelines.

                RESPECTFULLY SUBMITTED
                MICHAEL J. SULLIVAN
                United States Attorney

By:    */s/ William F. Bloomer*
       WILLIAM BLOOMER
       Assistant U.S. Attorney
       BBO#553104
       william.bloomer@usdoj.gov
       (617) 748-3644

**CERTIFICATE OF SERVICE**

      I, William F. Bloomer, hereby certify that this document filed through the ECF system on March 19, 2007, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                          */s/William F. Bloomer*
                                          WILLIAM F. BLOOMER

Date: 19 March 2007