# United States District Court
# District of Massachusetts

UNITED STATES OF AMERICA,

    v.                              CRIMINAL. NO. 04-10336-NMG-12

JUAN NUNEZ,
    Defendant.

## *REPORT AND RECOMMENDATION ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (#500)*

COLLINGS, U.S.M.J.

### *I. Introduction*

The *pro se* petitioner Juan Nunez ("petitioner" or "Nunez") seeks to vacate his conviction pursuant to 28 U.S.C. § 2255. Nunez was convicted after a ten-day jury trial of heroin-related offenses and was sentenced to 151 months in prison. His conviction was affirmed on appeal. *See United States v. Santiago*,

560 F.3d 62 (1st Cir.), *cert. denied*, 130 S. Ct. 140 (2009). The government urges summary dismissal of the petition, contending that the claims are conclusively belied by the record, or are insufficiently developed to warrant habeas relief. For the reasons that follow, the Court shall recommend that the motion under 28 U.S.C. § 2255 be DENIED.

## *II. Factual and Procedural Background*

Nunez was arrested in connection with his participation in a heroin distribution organization in Lowell, Massachusetts. The investigation, led by the Drug Enforcement Agency (""DEA"), included visual surveillance, court-authorized wire-taps of the defendants' cell phones, and seizure of drugs and paraphernalia from certain defendants (but not from Nunez). *See Santiago*, 560 F.3d at 65. Nunez's defense at trial was that he was, at most, a friend of Santiago, the organization's leader, and that wire-taped conversations between Santiago and Nunez were consistent with this theory. The jury evidently rejected this theory, because it convicted Nunez and four others of conspiracy to distribute heroin. The jury also found that the conspiracy involved at least one kilogram of heroin.

On October 19, 2009, Nunez filed the present Motion Under 28 U.S.C. §

2255 to Vacate, Set Aside, or Correct Sentence by a Person in Custody (#500). On February 24, 2010, the government filed its Response to Defendant's Motion Pursuant to 28 U.S.C. § 2255 and Request for Summary Dismissal (#515). On April 19, 2010, Nunez filed a Reply to the Government Opposition of his 28 U.S.C. § 2255 [sic] (#519). On April 27, 2010, the government filed its Response to Defendant's Reply Memorandum (#520), to which it attached the Affidavit of Roger Witkin, Esquire, Nunez's trial and appellate counsel. In response, Nunez filed his Reply to the Government Supplement [sic] Motion Filed on 04-27-2010, with an Unsworn Affidavit from Mr. Roger Witkin (#521). On May 21, 2012, the government filed, at the Court's direction, an amended Affidavit of Roger Witkin (#575). The motions are thus ripe for disposition.[1]

---

[1] On May 30, 2012, Nunez requested permission to supplement his petition with a claim based on the Supreme Court's recent decision in *United States v. Jones*, 132 S. Ct. 945 (2012). (*See* #576) In *Jones*, the Supreme Court held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search'" within the meaning of the Fourth Amendment. *Id.* at 949 (footnote omitted). The government, in opposition, argues that the claim is untimely, that Nunez lacks standing to challenge the constitutionality of a search of his co-defendant's car, and that, in any event, the government complied with the Fourth Amendment's warrant requirement. (#578) Timeliness aside, there is no dispute that the GPS device was placed on a minivan owned by a co-defendant, and not on Nunez's car. Nunez would not have standing to challenge that search. *See United States v. Kimball*, 25 F.3d 1, 9 (1st Cir. 1994) ("In order to embark on a suppression challenge, a defendant must show that he had a reasonable expectation of privacy in the area searched . . . .")(internal quotation marks and citation omitted). In addition, the government has presented evidence that the government, in fact, complied with the Fourth Amendment's warrant requirement, and so any claim is conclusively rebutted by the record.

*III. Discussion*

Nunez asserts ten grounds for relief in his petition: 1) his conviction was obtained through the false testimony of DEA agents; 2) his arrest was illegal because DEA agents failed to advise him of his Miranda rights; 3) trial counsel was ineffective in failing to make an opening statement; 4) trial counsel was ineffective because he "knew . . . that the Government plot against his client Nunez [was] false"; 5) trial counsel was ineffective in failing to heed Nunez's wishes to testify in his own defense; 6) trial counsel was ineffective in failing to call Nunez's wife to testify at trial; 7) trial counsel was ineffective in failing to deliver a persuasive closing argument; 8) trial counsel was ineffective in failing to make meaningful objections at trial; 9) appellate counsel was ineffective in failing to present all the previous claims on direct appeal; and 10) trial counsel was ineffective in failing to move to dismiss the "defective indictment."

**A. Legal Principles**

Most of Nunez's claims are governed by the familiar standard set out in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To succeed on a Sixth Amendment claim of ineffective assistance of counsel, a defendant must establish that his "counsel's representation 'fell below an objective standard of

reasonableness'" and that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Moreno-Espada v. United States*, 666 F.3d 60, 64 (1st Cir. 2012) (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1482 (2010) (further internal quotation marks and citation omitted)).  Under *Strickland*, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  With regard to the performance aspect of the standard, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' and [a petitioner] 'must overcome the presumption that . . . the challenged action might be considered sound trial strategy.'" *Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir. 2010) (quoting *Strickland*, 466 U.S. at 689) (further citation and internal quotation marks omitted) (third alteration in original).  Accordingly, "a lawyer's performance is deficient under *Strickland* 'only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it.'" *Id.* (quoting *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006)).

### B. The Claims

**Ground 1** was not raised on direct appeal, although it could have been, and it can be dismissed on that ground alone. *Knight v. United States*, 37 F.3d 769, 773 (1st Cir. 1994) ("Having bypassed his opportunity to raise the claim on direct appeal, [a petitioner] cannot raise it . . . on collateral attack."). Although Nunez in Ground 9 faults his appellate counsel for failing to raise the claim on direct appeal, both the claim itself and the derivative ineffective-assistance-of-counsel claim fail for complete lack of development. Nunez has offered no particularized allegations to suggest that DEA agents offered false testimony. Nunez's trial counsel subjected the agents to pointed cross-examination on the particulars of their evidence, (*see, e.g.*, # 419, VII: 9-18; 53-64; 76-86; 98-103), and the jury evidently chose to believe that evidence. Likewise, **Ground 2** could have been raised on direct appeal, but was not, and can be dismissed on that ground. In any event, the claim is meritless. At bottom, Nunez complains that the arresting agents never provided him with his Miranda warnings. But a constitutional violation occurs "only upon the admission of unwarned statements into evidence at trial. And, at that point, the exclusion of unwarned statements is a complete and sufficient remedy for any perceived Miranda violation." *United States v. Patane*, 542 U.S. 630, 641-42

(2004)(alterations, internal quotation marks and citation omitted). Here, Nunez does not contend that he was prejudiced by the admission at trial of any unwarned statements. It follows that counsel could not have been ineffective in failing to raise this claim.

The Court agrees with the government that **Grounds 3 and 7** are conclusively rebutted by the record. Trial counsel delivered an opening and closing statement, in which he vigorously argued trial counsel's theory of the case, *viz*., that Nunez and Santiago were old friends and not co-conspirators, and that the evidence did not support Nunez's involvement in the drug trafficking scheme. These claims are thus facially meritless.

**Ground 4** fails for lack of any developed credible allegations. Nunez simply claims that his counsel was ineffective because his counsel knew that the government had made up a plot against his client. This allegation is sheer undeveloped speculation and Nunez has failed to satisfy both the performance and prejudice prongs of *Strickland*.

In **Ground 5**, Nunez alleges that he "told his counsel that he wanted to testif[y]." (#500 at 6) He essentially says that he would have testified that he did not sell drugs to Santiago, that Santiago did not buy any drugs from him,

and that Santiago never told Nunez where he was getting his drugs. He also contends that he would have testified that when he called Santiago about going to the game, this was true. In short, Nunez suggests that his trial counsel failed to heed Nunez's wish to testify; and he contends that his testimony would have served to establish that he was not involved in the drug trafficking scheme, and that government witnesses mischaracterized intercepted conversations between Santiago and Nunez as coded language about drugs.

"There is no doubt 'that a defendant has a fundamental constitutional right to testify in his own defense,' and that the defendant, not his attorney, is the one who makes the ultimate decision whether to testify or not." *United States v. Merlino*, 592 F.3d 22, 26 (1ˢᵗ Cir.) (quoting *Owens v. United States*, 483 F.3d 48, 58 (1ˢᵗ Cir. 2007) (further internal quotation marks and citation omitted)), *cert. denied,* 131 S. Ct. 283 (2010). In moving for summary denial, the government argues that Nunez's allegations lack the specificity required to support a claim that trial counsel interfered with Nunez's right to testify or failed to advise him of his right to testify. *See, e.g., Siciliano v. Vose*, 834 F.2d 29, 31 (1ˢᵗ Cir. 1987) (affirming summary denial of claim that trial counsel prevented petitioner from testifying where claim lacked specific and detailed

supporting facts). In addition, the government relies on the affidavit of Roger Witkin ("Witkin"), Nunez's trial counsel. In that affidavit, Witkin avers that it is his practice to advise criminal defendants of their constitutional right to testify and not to testify at trial, and that he advised Nunez of this right. He further avers that "[a]t no time did Mr. Nunez inform me that he wished to testify at trial in this case. In fact, after discussing the government's evidence with him, Mr. Nunez agreed it was in his best interest not to testify at trial." (#575 ¶ 4) In response to Witkin's affidavit, Nunez states that "Mr. Witkin never gave [him] any advice of [his] constitutional right to testify or not testify at . . . trial." (#521 at 2)

"Once a prisoner requests relief under § 2255, a district court must grant an evidentiary hearing on the prisoner's claims unless 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Owens v. United States*, 483 F.3d 48, 57 (1st Cir. 2007) (quoting 28 U.S.C. § 2255). Furthermore, under First Circuit precedent, "an evidentiary hearing is warranted on . . . [a right-to-testify] claim only where the allegations are 'highly specific and usually accompanied by some independent corroboration.'" *Duguay v. Spencer*, 811 F. Supp.2d 531, 532 (D. Mass. 2011)

9

(quoting *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir.1987) (quoting *United States v. Butt*, 731 F.2d 75, 80 n. 5 (1st Cir. 1984))). In short, the First Circuit has required some substantiation or some independent corroboration beyond bare-boned assertions to support such a claim. In *Owens* itself, for example, "Owens and one of Owens' trial attorneys provided detailed affidavits indicating that Owens was never told of his right to testify at trial." *Owens*, 483 F.3d at 60. Here, Nunez's assertion that his counsel failed to inform him of the right to testify (asserted for the first time in response to Witkin's affidavit) lacks the specificity and the requisite corroboration to warrant an evidentiary hearing.

Moreover, Nunez's own submissions confirm that he and Witkin had conversations about whether Nunez would testify: Nunez essentially says that he asked Witkin to testify and that Witkin advised against it. Thus, "the undisputed facts confirm not only that Petitioner knew he had a right testify, but that he and his attorney discussed the option several times." *McCann v. United States*, 528 F. Supp.2d 4, 6 (D. Mass. 2008) (noting that "[t]he affidavit of Petitioner's counsel, and indeed the submissions of Petitioner himself, confirm that counsel and Petitioner discussed the possibility of Petitioner's testifying more than once"). *Cf. also Siciliano*, 834 F.2d at 31 (record suggests

that petitioner "knew that, legally speaking, he could testify if he chose; but he chose not to testify as a matter of trial strategy, perhaps at the strong urging of counsel"); *Osorio-Norena v. United States*, 658 F. Supp.2d 266, 273 (D. Mass. 2009) ("as in *Siciliano*, the petitioner's affidavit and the record suggests that he knew that he could testify but was strategically dissuaded from so doing by defense counsel"); *see also United States v. Ouimette*, No. 99-489-ML, 2010 WL 1839416, at *4 (D.R.I. May 6, 2010) ("Here, there is no question that Ouimette knew of his right to testify, as it is undisputed that he and [his counsel] had a number of conversations concerning whether he should do so.").

Finally, "[u]naccompanied by coercion, legal advice concerning exercise of the right to testify infringes no right, but simply discharges counsel's ethical responsibility to the accused." *Lema v. United States*, 987 F.2d 48, 52 (1st Cir. 1993)(citations omitted). Nunez does not allege that counsel coerced him into relinquishing his right to testify. And on this record, the Court cannot conclude that it would have been unreasonable trial strategy to advise Nunez not to testify and to put the government to its burden of proof. As the government points out, Nunez would have been forced to explain the cryptic nature of his recorded phone calls with Santiago, and the furtive nature of some of his

actions at odd hours, all recounted by agents who had surveilled him. (*See* #515 at 16)

Moreover, even assuming (contrary to the record evidence) that Nunez was unaware of his right to testify, Nunez has failed to establish the prejudice prong of the *Strickland* standard. *See McCann*, 528 F. Supp.2d at 7 ("The First Circuit recognized in *Owens* that in certain circumstances a failure to inform a defendant of his right to testify might result in no prejudice and therefore fail to qualify a Petitioner for *habeas* relief."). Here, Nunez simply states that he would have testified that he was not engaged in drug trafficking with Santiago. There were many details, however, that warranted an innocent explanation; Nunez could have readily supplied that explanation in an affidavit. *Cf. Vega-Encarnacion v. United States*, 933 F.2d 1531 (Table), 1993 WL 138536, at *4 (1st Cir. 1993) (per curiam) (unpublished) ("In essence, appellant's argument regarding prejudice boils down to the bare assertion that had appellant been allowed to testify, he would have adequately rebutted and explained [the witness's statements]. What is lacking . . . is any indication of what appellant's testimony would have been."). Without the requisite particularity offering "genuinely exculpatory testimony," *Owens*, 483 F.3d at 59, Nunez has failed to

establish a reasonable probability that the outcome of the trial would have been different. *Cf. Palmer v. Hendricks*, 592 F.3d 386, 396 (3rd Cir. 2010) (noting that *Owens*' standard is not "onerous" but that "it must be sufficiently detailed to be 'genuinely exculpatory,'" and rejecting argument that *Owens* adopted a rule of per-se prejudice in right-to-testify cases).[2] In short, even if the standard is not onerous, Nunez could have provided some detail in an effort to rebut or explain the government's evidence. In the absence of this minimal showing, the Court concludes that Nunez has failed to establish the requisite prejudice.

In **Ground 6**, Nunez argues that his counsel was ineffective in failing to call Nunez's wife to testify. Nunez contends that his wife would have testified about the "truth about her husband['s] association with Santiago." (#500 at 6) Presumably, then, she would have testified that Nunez was merely friends with Santiago. Trial counsel's "decision to present the[] testimony [of potential witnesses], must be evaluated in light of whatever trial strategy reasonably

---

[2] In *Owens* itself, the First Circuit concluded that the petitioner's statement in his affidavit that he "would have testified that he did not have any role in the murders charged" satisfied the prejudice requirement. *Owens v. United States*, 483 F.3d 48, 59 n.8 (1st Cir. 2007). Notably, however, in the *Owens* case, the defendant had been acquitted of several charges, including another murder, and the district court in *Owens* had concluded that these facts were pertinent to the prejudice inquiry. *See Owens v, United States,* 236 F. Supp. 2d 122, 143 (D. Mass. 2002) (following *per-se* prejudice standard but noting significance of acquittals), *aff'd in part, rev'd in part,* 483 F.3d 48 (1st Cir. 2007). Nunez's vague proposed testimony, however, does not establish a reasonable probability that the outcome of the trial would have been different, i.e., "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

competent counsel devised in the context of the particular case." *Lema*, 987 F.2d at 55. Here, trial counsel's strategy was to hold the government to its burden of proof, and to argue that the government had failed to establish that Nunez was involved in the conspiracy at all. "The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." *Id*. at 54. Given counsel's decision in this case to argue the weaknesses of the government's case, counsel may well have wanted to avoid the pitfalls that come with putting any witness on the stand, even favorable ones. *Cf. id.* ("the risk of 'rocking the boat' may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony."). In short, there is no reason to think that counsel's decision not to call Nunez's wife as a witness was anything but a strategic decision: counsel may well have concluded that the testimony of a biased witness would have done little to counter the government's evidence, and might have left the defense exposed to uncertain government cross-examination. Here, Nunez's counsel, in his affidavit, further elaborates that any "information that [he] would have sought to elicit from Mr. Nunez's wife was elicited from Captain Terry Hanson of the Massachusetts State Police during

cross-examination." (#575 ¶ 5) During cross-examination, Hanson conceded that a search of Nunez's home turned up no drugs, drug paraphernalia or sums of cash. Nunez's counsel further avers that "[t]he risk of potentially damaging information being elicited from Mr. Nunez's wife during the government's cross-examination of her, in my professional opinion, outweighed any potential benefit from her direct testimony in these circumstances." (*Id.*) Nunez has not overcome the presumption that the decision here was a tactical decision.

In **Ground 8**, Nunez claims that his counsel was ineffective in merely "pretending" to make objections at trial. This contention is belied by the record, and requires little discussion. Even a cursory review of the trial transcripts reveals that counsel actively and vigorously lodged objections throughout the trial, (*see, e.g.*, # 415: Tr. I:168-169; # 416: II: 123; VII:30), and vigorously cross-examined the government's witnesses. For example, defense counsel elicited from the GPS technician that co-defendant Julio Santiago's trips to Nunez's house in Brooklyn tended to last for several hours; from the surveilling officer that although co-defendant Santiago carried a "garment bag" into Nunez's house, the officer had no idea what was in the bag; and from the arresting officer, that a thorough search of Nunez's home turned up no heroin

15

or drug paraphernalia. Furthermore, this case involved multiple defendants–government witnesses called were cross-examined by a lead defense counsel, depending on the significance of the witnesses's testimony to the particular defendant. Nunez lived in New York, and had contact with one co-conspirator in Massachusetts, Julio Santiago. Thus, it would have made no sense for Nunez's counsel to cross-examine witnesses who testified about their investigation into the surveillance of co-conspirators in Massachusetts.

In **Ground 9**, Nunez faults his appellate counsel for failing to raise any of the above claims in the direct appeal. Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). And "[g]enerally, only when ignored issues are clearly stronger that those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (internal quotation marks and citation omitted). As noted in the discussion of the claims, only Grounds 1 and 2 could have been presented on direct appeal. For the reasons noted above, those claims would have lacked merit even if appellate counsel had raised them. Otherwise, the First Circuit has repeatedly held that ineffective-assistance-of-counsel claims

may not ordinarily be brought on direct appeal. *See, e.g., United States v. Ofray-Campos*, 534 F.3d 1, 34 (1st Cir.), *cert. denied.* 555 U.S. 1020 (2008). Thus, appellate counsel was not ineffective in failing to raise the remaining claims.

Finally, in **Ground 10**, Nunez claims that his counsel was ineffective in failing to move to dismiss "the Defective Indictment." The claim is wholly undeveloped: Nunez fails to identify the purported defect in the indictment. Nunez has necessarily failed to establish a constitutional violation under *Strickland*. *See David v. United States*, 134 F.3d 470, 478 (1st Cir. 1998) (habeas petitioner should not receive an evidentiary hearing "if his allegations are 'vague, conclusory, or palpably incredible'") (quoting *Machribroda v. United States*, 368 U.S. 487, 495 (1962)).

## *IV. Recommendation*

For all the above reasons, I RECOMMEND that petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (#500) be DENIED and that Final Judgment enter accordingly.

## V. Review by the District Judge

The parties are hereby advised that any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply to file objections shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ *Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

June 25, 2012.